**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DAVID HANO,

Plaintiff,

vs.

STATE OF NEVADA, et al.,

Defendants.

Case No.: 2:19-cv-02246-GMN-EJY

**ORDER**

Pending before the Court is Plaintiff David Hano's Motion for Preliminary Injunction, (ECF No. 8). Defendants Gregory Bryan, Cornelius Finley, and Jonathan Weber (collectively, "Defendants")[1] filed a Response, (ECF No. 22), and Plaintiff filed a Reply, (ECF No. 31).[2]

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Preliminary Injunction.

## I. BACKGROUND

This case arises from Defendants' alleged failure to provide medical treatment for Plaintiff's heart condition while Plaintiff is incarcerated at High Desert State Prison ("HDSP"). (*See generally* Mot. Prelim. Inj. ("P.I."), ECF No. 8). Plaintiff contends that he "suffered major

[1] Defendants in this case also include Brian Williams, Michael Minev, John Faulkner, Julie Matousek, Gary Piccinini, Arianna Rhynard, and Jeremy Bean, however, they were not included in the Response.

[2] Plaintiff did not timely file his Reply by the deadline of September 15, 2020. Instead, Plaintiff attached his Reply to a Motion for Sanctions filed on October 15, 2020, which explains that Plaintiff submitted his Reply to the High Desert State Prison ("HDSP") law library on September 10, 2020, but HDSP staff failed to file it with the Court. (Mot. Sanctions at 2, ECF No. 31). In their Response to Plaintiff's Motion for Sanctions, Defendants state that they "have no objection as to this Court accepting and considering Hano's Reply to Defendant's Response." (Resp. Mot. Sanctions 2:5–6, ECF No. 32). To the extent that Plaintiff's Motion for Sanctions can be construed as a Motion to Extend Time to File a Reply, the Court grants the extension of time and will consider Plaintiff's Reply in the present case.

heart failure" on January 18, 2018. (First Am. Compl. ("FAC") ¶ 24, ECF No. 21). Plaintiff's medical records demonstrate that Plaintiff was transported to Centennial Hills Hospital after "experiencing new onset chest pain and cardiac arrest . . . that was treated with CPR and shocks." (Med. Records at 38, Ex. A to Reply, ECF No. 31). Plaintiff's attending physician, Dr. Amrish Malhi, determined the heart attack's cause to be "a 100% occluded proximal and mid [left anterior descending artery]," which was "successfully treated with two drug eluting stents." (*Id.*). The hospital discharged Plaintiff on January 22, 2018, with a diagnosis of "congestive heart failure" and prescribed him a number of heart medications.[3] (Med. Records at 50, Ex. 3 to Under Seal Submission ("Suppl. Resp."), ECF No. 29-3).[4] Plaintiff claims that his "life literally depends on these medications" and that he "cannot miss doses." (P.I. at 7).

Between Plaintiff's heart attack on January 18, 2018, and Defendants' submission of Plaintiff's medical records on October 12, 2020, (ECF No. 29), Plaintiff was transported to the hospital for severe chest pains at least five more times.[5] (*See* Med. Records at 8, 81, Ex. 1 to Suppl. Resp., ECF No. 29-1); (Med. Records at 100, 126, Ex. 2 to Suppl. Resp, ECF No. 29-2); (Med. Records at 14, 38, Ex. 3 to Suppl. Resp). After each hospital visit, Plaintiff's treating physicians reminded him to keep taking his medications and not to skip doses. (*See, e.g.*, Med. Records at 9, 46, 81, Ex. 1 to Suppl. Resp.); (Med. Records at 132, Ex. 2 to Suppl. Resp.); (Med. Records at 39, 51, Ex. 3 to Suppl. Resp). Plaintiff claims that the onset of his severe

---

[3] After his heart attack, Plaintiff was prescribed amiodarone, aspirin, atorvastatin, carvedilol, isosorbide mononitrate, lisinopril, spironolactone, and ticagrelor. (Med. Records 52, Ex. 3 to Suppl. Resp, ECF No. 29-3). Plaintiff returned to the hospital five days later on January 27, 2018, also presenting with severe chest pains, and he was additionally prescribed clopidogrel and nitroglycerin. ((*Id.* at 38–40).

[4] Defendants filed an Under Seal Submission, (ECF No. 29), in response to the Court's Order, (ECF No. 25) to provide Plaintiff's medical records.

[5] Plaintiff was in the hospital with chest pain on the following dates: January 27, 2018, November 17, 2018, June 27, 2019, September 5, 2019, February 5, 2020. (*See, e.g.*, Med. Records at 8, 81, Ex. 1 to Suppl. Resp., ECF No. 29-1); (Med. Records at 100, 126, Ex. 2 to Suppl. Resp, ECF No. 29-2); (Med. Records at 14, 38, Ex. 3 to Suppl. Resp).

chest pains is the result of missing doses of his prescribed heart medication because Defendants fail to timely refill them. (P.I. at 7).

Specifically, in his Motion for Preliminary Injunction, Plaintiff asserts that Defendants did not timely refill his nitroglycerin prescription, which resulted in Plaintiff's severe chest pains and subsequent hospitalization on February 2, 2020. (*See generally* P.I.). Nitroglycerin is prescribed "to relieve chest pain (angina) in people that have a certain heart condition (coronary artery disease)." (Med. Records at 42, Ex. 1 to Suppl. Resp.). Plaintiff claims that he must take nitroglycerin "at the first sign of an acute anginal attack" because "the nitroglycerin if taken right away will usually stop the pains . . . [b]ut if [he] start[s] having chest pains and [doesn't] have any nitroglycerin to take for a substantial amount of time, [his] chest pains get so bad that the nitroglycerin, once taken has little to no [e]ffect." (P.I. at 2, 5). (*See also* Med. Records at 42, Ex. 1 to Suppl. Resp. (directing patients to take nitroglycerin "as soon as possible" after chest pain occurs)).

Plaintiff asserts that he submitted a request for a nitroglycerin refill on January 22, 2020, but had still not received his medication when he began experiencing severe chest pains on the morning of February 2, 2020. (P.I. at 2); (Med. Records at 37, Ex. 2 to Suppl. Resp.). Plaintiff filed an emergency grievance and was eventually brought to the medical department, where he was given nitroglycerin tablets, but by this point his pain was too prolonged, and the medicine provided "no pain relief." (*See id.* at 2–4). Because Plaintiff's pain did not subside, he was taken by ambulance to Desert Springs Hospital for treatment. (*Id.* at 4).

## II. LEGAL STANDARD

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense*

*Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference,

the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

## III. DISCUSSION

Plaintiff argues that missing doses of his medication "is going to kill [him]," and seeks a preliminary injunction to "order Defendants to supply [him] with all [his] prescribed medications on or before [his] prescriptions run out" and to "take [him] to all [his] scheduled follow-up appointments with Dr. Taylor and treatments." (P.I. at 1, 7). Defendants counter that Plaintiff "has received appropriate medical treatment and has failed to show that he is entitled to the extraordinary remedy of injunctive relief." (Resp. 2:4–5, ECF No. 22).

As a preliminary matter, the Court limits its consideration of injunctive relief to Plaintiff's claims concerning his nitroglycerin prescription. Even though Plaintiff's claim for relief includes all of his medications and doctor's appointments, the Motion for Preliminary Injunction itself focuses only on events surrounding one prescription: nitroglycerin. Because the Motion does not include specific allegations about the rest of Plaintiff's prescribed medications and doctor's visits, the Court limits its evaluation to Plaintiff's allegations concerning missed doses of nitroglycerin, which ensures that the relief granted is "narrowly drawn" and "the least intrusive means necessary to correct the harm." *See* PLRA, 18 U.S.C. § 3626(a)(2).[6] Therefore, the below discussion assesses whether Plaintiff has met his burden to receive injunctive relief under the *Winter* factors, with respect to his nitroglycerin prescription alone.

//

//

[6] Accordingly, the Court denies the claims for relief not pertaining to nitroglycerin without prejudice. Plaintiff may renew his request for preliminary relief if he can provide allegations and evidence concerning his entitlement to such relief regarding his other prescriptions and hospital visits.

**A. Likelihood of Success on the Merits**

To be granted a preliminary injunction, Plaintiff must first show that he is likely to succeed on the merits of his claim by demonstrating deliberate indifference to a serious medical need. *See Farmer*, 511 U.S. at 828. Conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (finding that an inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need). Deliberate indifference to such a serious medical need exists "when prison officials . . . delay . . . medical treatment." *Jett*, 439 F.3d at 1096. Nonetheless, a delay alone is not sufficient to establish deliberate indifference; the prisoner must also show that the delay led to further injury. *See Shapley*, 766 F.2d at 407.

The Court first assesses whether Plaintiff's medical condition is "serious." Defendants dispute that Plaintiff has a serious medical need by claiming that he does not suffer from "coronary artery disease or acute cardiopulmonary disease." (Resp. 4:3). Defendants point to excerpts of medical records from Plaintiff's hospitalizations for chest pain on November 17, 2018, and September 5, 2019, which state, respectively, that the "cardiologist found no significant coronary artery disease" and that a chest X-Ray revealed "no acute cardiopulmonary disease." (Relevant Med. Records, Ex. B to Resp., ECF No. 22-2).

However, Plaintiff suffered congestive heart failure in 2018, after which "cardiology recommended maximal medical therapy and risk factor modification." (Med. Reports at 47, Ex. A to Reply, ECF No. 31); (Med. Records at 31, Ex. 1 to Reply, ECF No. 31-1).[7] As a result,

---

[7] The medical records containing the specifics of Plaintiff's January 18, 2020, heart attack and subsequent treatment and hospital stay were not provided by Defendants, even after the Court ordered them to file

Plaintiff is currently prescribed fourteen different medications, of which, at least five directly treat his heart condition or prevent further heart attacks.[8] Additionally, Plaintiff's doctors continually remind Plaintiff to take his medications without missing doses, further demonstrating that Plaintiff's condition is "worthy of comment or treatment." *See McGuckin*, 974 F.2d at 1059; (Med. Records at 9, 46, 81, Ex. 1 to Suppl. Resp.); (Med. Records, Ex. 2 to Suppl. Resp. at 132); (Med. Records at 39, 51, Ex. 3 to Suppl. Resp). Moreover, while some of Plaintiff's hospital visits may not have resulted in a diagnosis of "coronary artery disease or acute cardiopulmonary disease," the medical records produced by the hospital during each visit still list "myocardial infarction," more commonly known as a heart attack, as one of Plaintiff's "ongoing" or "active problems." (*See* Med. Records at 15, Ex. 1 to Suppl. Resp.); (Med. Records at 147, Ex. 2 to Suppl. Resp.); (Med. Records at 15, Ex. 3 to Suppl. Resp.). Finally, Plaintiff has a well-documented history of experiencing "chronic" chest pains so "substantial" that he requires hospitalization. *See McGuckin*, 974 F.2d at 1059. Accordingly, the Court determines that Plaintiff's heart condition is a serious medical need.

However, even if Plaintiff suffers from a serious medical need, he still must establish Defendants' deliberate indifference to that need. In the present case, Plaintiff alleges that prison officials delayed his medical treatment because he requested a nitroglycerin refill on

---

"Plaintiff's medical records since January 1, 2018, concerning his prescription medication and hospital visits." (Minute Order, ECF No. 25). Plaintiff provided these records as an exhibit to his Reply.

[8] The discharge sheet from Plaintiff's most recent hospital visit on June 25, 2020, lists his medications as: aspirin, carvedilol, clopidogrel, docusate, finasteride, isoniazid, isosorbide mononitrate, lisinopril, nitroglycerin, omega-3 polyunsaturated fatty acids, pyridoxine, simvastatin, spironolactone, and tamsulosin. (Med. Records at 10, Ex. 1 to Suppl. Resp.). At least five of these medications are heart medications. Lisinopril treats high blood pressure, which helps prevent heart attacks, and "it is also used to treat heart failure and improve survival after a heart attack." (*Id.* at 35). Clopidogrel is "used to prevent heart attacks and strokes in persons with heart disease (recent heart attack)." (*Id.* at 39). Aspirin relieves pain and prevents blood clots, which reduces the risk of stroke and heart attack. (*Id.* at 41). Nitroglycerin is "used to relieve chest pain (angina) in people that have a certain heart condition (coronary artery disease)." (*Id.* at 42). Carvedilol treats "high blood pressure and heart failure." (*Id.* at 44).

January 22, 2020, and still had not received the medication eleven days later when his chest pains began. (*See* P.I. at 2); (Med. Records at 37, Ex. 2 to Suppl. Resp.).[9] Without immediate access to nitroglycerin, Plaintiff experienced prolonged chest pain so severe that he was hospitalized. (*See generally* P.I., ECF No. 8). Because the delay in receiving nitroglycerin caused Plaintiff's acute pain and eventual hospitalization, the Court concludes that the delay did lead to further injury. (*See* P.I. at 4–5). *See, e.g.*, *Morales v. Donnelly*, No. 3:16-cv-00371-MMD-WGC, 2016 WL 5329587, at *1 (D. Nev. Sept. 21, 2016) (adopting the Magistrate Judge's Report and Recommendation that "a failure to timely delivery medications is likely to lead to further injury" when a plaintiff has stents placed following a heart attack). Therefore, Plaintiff has demonstrated a likelihood of success on the merits that Defendants were deliberately indifferent to Plaintiff's serious medical need by failing to timely refill his nitroglycerin.[10]

**B. Irreparable Harm**

Plaintiff has presented significant evidence that he will suffer irreparable harm if he is not granted injunctive relief. Plaintiff had a severe heart attack and has been hospitalized multiple times for severe chest pain. (*See* FAC ¶ 24); (Med. Records at 8, 81, Ex. 1 to Suppl. Resp., ECF No. 29-1); (Med. Records at 100, 126, Ex. 2 to Suppl. Resp, ECF No. 29-2); (Med. Records at 14, 38, Ex. 3 to Suppl. Resp). Moreover, the nitroglycerin is prescribed to reduce

---

[9] Medical records provided by Defendants indicate that Plaintiff did not receive a nitroglycerin refill until February 10, 2020, after he was already hospitalized for chest pain. (*See* Med. Records at 124, Ex. 1 to Suppl. Resp.); (Med. Records at 37, Ex. 2 to Suppl. Resp.).

[10] Defendants claim that they could not have been deliberately indifferent because they did not "personally participate in the alleged constitutional violation." (Resp. 4:14–18). However, the Defendants in this case include Michael Minev, the NDOC Medical Director, as well as HDSP medical staff members such as Dr. Gregory Bryan. (FAC ¶¶ 5, 12). The Medical Director is responsible for pharmacy services and policies and the medical staff also prescribe medication, which demonstrates that Defendants do "personally participate" in the distribution of Plaintiff's medications. (*See, e.g.*, Med. Records at 131, Ex. 1 to Suppl. Resp). *See also Morales v. Donnelly*, No. 3:16-cv-00371-MMD-WGC, 2016 WL 5339681, at *5 (D. Nev. Aug. 26, 2016).

the acute pain Plaintiff suffers as a result of his heart condition. (*See* Med. Records at 35–44, Ex. 1 to Suppl. Resp.). Therefore, a delay in receiving prescription refills could result in unnecessarily prolonged chest pain, additional surgical procedures, or even another heart attack. (*See* P.I. at 5, 7). Furthermore, Plaintiff's complaint of a delay in receiving his nitroglycerin is not an isolated incident; the record indicates that Plaintiff has submitted multiple grievances about the timeliness of his nitroglycerin prescription refills.[11] Defendants' only response is that Plaintiff cannot suffer irreparable harm because he does not have a serious medical condition, which is an argument that the Court has already rejected. (*See* Resp. 5:7–11). Thus, Plaintiff has demonstrated that he will suffer irreparable harm absent injunctive relief.

**C. Balance of the Equities**

Plaintiff has demonstrated that he may suffer severe chest pain or additional cardiac issues without timely receiving his nitroglycerin. The balance of equities tips sharply in Plaintiff's favor because Defendants have not explained any hardships they would face if ordered to timely refill Plaintiff's prescription.

**D. Public Interest**

Defendants concede that the "public interest is in favor of inmates receiving appropriate medical treatment." (Resp. 5:20). Additionally, they state that the "public interest is in favor of leaving medical decision-making to medical professionals." (*Id.* at 5:21–22). Therefore, the Court finds that it is within the public interest to ensure that Plaintiff timely receives the medication that he has been continually prescribed by medical professionals.

//

---

[11] For example, Plaintiff requested a nitroglycerin refill on May 18, 2019, and did not receive the medication until June 8, 2019, which is a three-week delay. (*See* Med. Records at 13, 11, Ex. 4 to Suppl. Resp.). (*See also* Med. Records at 125, 143, Ex. 3 to Suppl. Resp.); (Med. Records at 6, 10, 11, 12, Ex. 4 to Suppl. Resp.).

Accordingly, the Court grants Plaintiff's Motion for Preliminary Injunction with respect to his nitroglycerin prescription and orders Defendants to provide Plaintiff's nitroglycerin refills within one week of his request.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 8), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants shall provide Plaintiff with his nitroglycerin prescription within one week of a refill request.

**DATED** this 13 day of November, 2020.

_________________________________
Gloria M. Navarro, District Judge
United States District Court